IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

INHALE, INC., *a California corporation*,

        Plaintiff,

  vs.

INHALE, LLC, *an Oregon company*,

        Defendant.

Case No. 6:19-cv-01780-AA
**OPINION AND ORDER**

_____

AIKEN, District Judge:

      This matter comes before the Court on defendant Inhale, LLC's Motion for Summary Judgment (doc. 24), plaintiff Inhale, Inc.'s Motion for Partial Summary Judgment (doc. 27), defendant's Objections to plaintiff's evidence (docs. 28, 35), and plaintiff's Motion to Strike Defendant's Reply Declaration (doc. 38). For the following reasons, the Court DENIES the parties' cross motions for summary judgment, SUSTAINS in part and OVERRULES in part defendant's objections, and DENIES plaintiff's Motion to Strike.

## BACKGROUND

The following facts are undisputed.  Plaintiff, Inhale Inc., is a California corporation incorporated in 2000.  It designs, manufactures, and sells tobacco, tobacco-related products, and apparel that display its logo.  Plaintiff is not licensed to sell marijuana.  Plaintiff is the owner of two trademark registrations:  the '605 Registration issued in 2002 and the '300 Registration issued in 2010.  These protect the mark in dispute.

The '605 Registration protects plaintiff's stylized mark used in connection with wholesale, retail, and online store services and mail order catalogue services "all featuring smoking articles, namely, tobacco hand pipes, tobacco waterpipes, cigars, cigarettes, lighters, oils, incense, oilburners, candles, stickers, t-shirts, hats, jewelry, body jewelry and sunglasses."  Compl. Ex. A (doc. 1).

<u>'605 Registration Mark:</u>



*Id*.

The '300 Registration protects plaintiff's unstylized mark used in connection with apparel, hookah products, electric vaporizers for smoking tobacco and other herbs, lighters, rolling papers, ashtrays, and cigar cutters.  Compl. Ex. B (doc. 1).  Additionally, "the mark consists of standard characters without claim to any particular font, style, size, or color."  *Id*.

'300 Registration Mark:

# INHALE

*Id*.

Defendant is an Oregon LLC using the business name Inhale. Bartkowski Decl. ¶ 3, Apr. 28, 2020 (doc. 25). It was established in 2015 and has been selling marijuana and marijuana-related products at its physical store in Eugene since 2018. *Id*. ¶¶ 3–4. Defendant is not licensed to sell tobacco and has never sold tobacco. *Id*. ¶¶ 11–12. The products sold in defendant's store are primarily third-party manufactured and do not display defendant's mark. *Id*. ¶ 10. However, defendant does sell apparel and stickers with its logos. *Id*. ¶ 13.

Defendant's Marks:



*Id*. ¶ 14.

In September 2019, plaintiff sent defendant a cease and desist letter concerning its use of an "Inhale" mark. Teran Decl. Ex. A (doc. 33). Defendant responded that its use of the word "inhale" does not infringe on plaintiff's trademarks. Teran Decl. Ex. B (doc. 33). Plaintiff filed its Complaint (doc. 1) in November 2019. On April 28, 2020, the parties filed cross-motions for summary judgment ("MSJ")

(docs. 24 and 27). Defendant raised evidentiary objections to a declaration filed by plaintiff (Ex.1 doc. 27; doc. 34)[1] in its Response to plaintiff's MSJ (doc. 28). In May, plaintiff filed a Motion to Strike (doc. 38) one of defendant's declarations (doc. 36). The Court heard oral argument on these matters on August 10, 2020.

## STANDARDS

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A party moving for summary judgment who does not have the ultimate burden of persuasion at trial must produce evidence which either negates an essential element of the non-moving party's claims or show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). A party who moves for summary judgment who does bear the burden of proof at trial must produce evidence that would entitle him or her to a directed verdict if the evidence went uncontroverted at trial. *C.A.R. Transp. Brokerage Co., Inc. v. Darden*, 213 F.3d 474, 480 (9th Cir. 2000).

When parties file cross-motions for summary judgment, the court "evaluate[s] each motion separately, giving the non-moving party in each instance the benefit of all reasonable inferences." *A.C.L.U. of Nev. v. City of Las Vegas*, 466 F.3d 784, 790–

---

[1] These two declarations are identical. Moving forward, the Court will cite to doc. 34 only.

91 (9th Cir. 2006) (quotation marks and citation omitted); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2010) ("Cross-motions for summary judgment are evaluated separately under [the] same standard."). In evaluating the motions, "the court must consider each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011).

## EVIDENTIARY ISSUES

### I.    *Defendant's Objections*

Defendant objects to nine paragraphs from the Declaration of Rani A. Chaoui (doc. 34), which plaintiff offered to support its partial summary judgment motion and its response opposing defendant's summary judgment motion. *See* Def.'s Resp. to Pl.'s Mot. Summ. J. at 1–3 (doc. 28); Def.'s Reply to Mot. Summ. J. at 1–2 (doc. 35). Defendant objects to the testimony in the paragraphs as (1) hearsay (paragraphs 68 and 70); (2) lacking personal knowledge (paragraphs 29–30, 40–42, 44, and 70) and inadmissible speculation (paragraphs 40–42, 44, and 70); and/or (3) lacking foundation (paragraphs 44, 61, and 70).

At summary judgment, a party "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Evidentiary objections to materials used to support a party's motion for summary judgment must be raised in the opposing party's response memorandum. Local Rule ("LR") 56. Rule 56 of the Federal Rules of Civil Procedure creates a "multi-step process by which a proponent may submit evidence, subject to

objection by the opponent and opportunity for the proponent to either" provide the evidence in admissible form "or propose a method for doing so at trial." *Foreword Magazine, Inc. v. OverDrive, Inc.*, No. 1:10-CV-1144, 2011 WL 5169384, at *2 (W.D. Mich. Oct. 31, 2011).

Plaintiff did not respond to defendant's objections and, in fact, appears to have missed them entirely, stating on three occasions in its Reply that defendant "did not object to Mr. Chaoui's declaration[.]"  Pl.'s Reply at 6, 9, 13 (doc. 37).  Nevertheless, many of defendant's objections are not well-taken or concern evidence that is immaterial.

As an initial matter, defendant's "speculation" objections to paragraphs 29–30, 40–42, 44, and 70 are OVERRULED because they are duplicative of the summary judgment standard.  *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006) (also noting that "statements in declarations based on speculation . . . are not *facts* and . . . will not be considered on a motion for summary judgment" (emphasis in original)).

Defendant objects to paragraphs 68 and 70 as inadmissible hearsay. Paragraph 68 concerns plaintiff's compliance with state and federal laws that apply to its products and paragraph 70 concerns Mr. Chaoui's "understanding that most other tobacco producers and makers of smoking articles" intend to enter the marijuana business if federal law changes.  This information is irrelevant to the issues before the Court, and the Court did not consider it in ruling on the summary judgment motions.

Defendant objects to paragraphs 29 and 30 as lacking personal knowledge.  In paragraph 29, Mr. Chaoui asserts that, through his research on defendant's business, he found that defendant "operates at least three (3) websites."  In paragraph 30, Mr. Chaoui provides the web address of one of the websites, where defendant "sells apparel and smoking articles to the general public[;]" and asserts that a "copy of said website that [he] downloaded on September 30, 2019, is attached" as Exhibit F to the declaration.  This objection is OVERRULED because the paragraphs contain observations within Mr. Chaoui's personal knowledge.

Defendant also objects to paragraphs 40–42 as lacking personal knowledge.  In these paragraphs, Mr. Chaoui asserts that "based on [his] research, purchases made by the agent, and other information [he] acquired, [he] confirmed" that defendant sells smoking articles, including marijuana, pipes, lighters, grinders, and vaporizers, and apparel, including t-shirts, sweatshirts, and hats, through its retail stores and websites.  He also confirmed that the apparel "bear[s] the 'Inhale' mark."  Like paragraphs 29 and 30, these paragraphs contain observations and other information within Mr. Chaoui's personal knowledge, particularly when considered in the context of paragraphs 29–39, which describe his online research and explain that he hired an "agent" to shop at defendant's Eugene, Oregon retail store and personally reviewed the agent's receipt and the items purchased from the store.  This objection is also OVERRULED.

Defendant objects to paragraph 44 as lacking personal knowledge and foundation.  In paragraph 44, Mr. Chaoui asserts that he also "confirmed that

[defendant] caters to the same type of customers as [plaintiff], smokers primarily within" their 20s and 30s.  Unlike the information in paragraphs 29, 30, and 40–42, which was obtained by internet research and viewing materials that an agent brought back from defendant's store, it is unclear how Mr. Chaoui obtained this information. Because plaintiff did not respond to the objections, this objection is SUSTAINED, and the Court will not consider paragraph 44 when ruling on the summary judgment motions.

Finally, defendant objects to paragraph 61 as lacking foundation.  In paragraph 61, Mr. Chaoui asserts that "habitual smokers of marijuana are also typically smokers of tobacco" and "known to be avid smokers of tobacco by way of a cigarette when they need a quick fix or a hookah pipe when they are in a more social setting."  However, based on the information in his declaration, Mr. Chaoui does not appear to be qualified to provide this testimony.  Mr. Chaoui asserts that the statement is "based on [his] decades long experience as a seller of tobacco and smoking articles" as the founder, shareholder, and CEO of Inhale, Inc.  But his experience in the tobacco industry does not qualify Mr. Chaoui to make broad assertion about the habits of marijuana smokers, and there is no evidence that he has any experience in the marijuana industry.  Indeed, he asserts that plaintiff does not sell or produce "marijuana or marijuana paraphernalia."  Chaoui Decl. ¶¶ 65, 67 (doc. 34).  This objection is also SUSTAINED, and the Court will not consider paragraph 61 when ruling on the summary judgment motions.

## II.    *Plaintiff's Motion to Strike*

Plaintiff moves to strike the Declaration of Justin Bartkowski (doc. 36), which defendant filed to support its Reply (doc. 35). Plaintiff asserts that the declaration fails to comply with Federal Rule of Civil Procedure 6(c)(2), which provides:

> Any affidavit supporting a motion must be served with the motion. Except as Rule 59(c) provides otherwise, any opposing affidavit must be served at least 7 days before the hearing, unless the court permits service at another time.

Fed. R. Civ. P. 6(c)(2). Plaintiff contends that the testimony in the Bartkowski declaration supports defendant's summary judgment motion and should have been served with the motion, not defendant's reply. Plaintiff complains that, by filing the declaration with the reply, defendant "ambush[ed]" plaintiff and "unfairly strip[ped]" it of the opportunity to respond to the evidence in the declaration. Mot. to Strike at 2 (doc. 38).

The Court will not discuss the merits of plaintiff's motion, first, because plaintiff failed to comply with this District's conferral requirement. Local Rule 7-1(a) provides, in relevant part:

> (1) Except for motions for temporary restraining orders, the first paragraph of every motion must certify that:
>
>> (A) In compliance with this Rule, the parties made a good faith effort through personal or telephone conferences to resolve the dispute and have been unable to do so; or
>>
>> (B) The opposing party willfully refused to confer; . . .
>
> . . . . .
>
> (3) The Court may deny any motion that fails to meet this certification requirement.

LR 7-1(a).   Plaintiff's Motion to Strike (doc. 38) lacks a conferral certification in violation of LR 7-1(a)(1).   And in its response to the motion, defendant asserted that plaintiff's counsel did not confer with defendant's counsel before filing the motion. Def.'s Resp. to Mot. to Strike at 3 (doc. 39).   At oral argument, plaintiff's counsel confirmed that he did not confer and, instead, filed the motion shortly after he read the Bartkowski declaration and determined that it violated Rule 6(c)(2).   Second, at oral argument, the Court offered plaintiff the opportunity to file a surreply to defendant's summary judgment to give plaintiff a chance to respond to the evidence and mitigate any prejudice caused by defendant's actions.   Plaintiff declined. Plaintiff's Motion to Strike (doc. 38) is, therefore, DENIED for failure to comply with LR 7-1(a).

## MOTIONS FOR SUMMARY JUDGMENT

Plaintiff moves for partial summary judgment with respect to liability on all four claims for relief.   Defendant moves for summary judgment on all claims.   The parties dispute whether (1) defendant's use of its mark is likely to cause consumer confusion and (2) the two marks are "identical or substantially indistinguishable." Defendant also moves for summary judgment on the issue of whether plaintiff can recover profits that defendant made by selling marijuana products.

## I.    *Infringement, False Designation of Origin, and Unfair Competition*

Although trademark infringement, false designation of origin, and unfair competition are three distinct claims, their essential elements are identical.   *Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1072 (C.D. Cal. 2004) (citing

*Brookfield Comm'ns Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1046 n.6, 1047 n.8 (9th Cir. 1999); *Meta-Film Assocs. v. MCA, Inc.*, 586 F. Supp. 1346, 1363 (C.D. Cal. 1984)). To prevail on these claims, plaintiff must show: (1) it owns a valid protectable mark; and (2) defendant subsequently and without authorization used a similar mark likely to cause consumer confusion, deception, or mistake. *Brookfield*, 174 F.3d at 1046–53.

The federal registration of a trademark with the U.S. Patent and Trademark Office constitutes "prima facie evidence of the validity of the registered mark, ownership of the mark and of the registrant's exclusive right to use the registered mark." 15 U.S.C. §§ 1057(b), 1115(a); *Brookfield*, 174 F.3d at 1046–47. Plaintiff has provided sufficient evidence to show that Inhale, Inc. is the registered owner of an "Inhale" mark. Chaoui Decl. Exs. B, C (doc. 34). Defendant does not oppose plaintiff's evidence or assertions. Thus, plaintiff's evidence is sufficient to show a valid and protectable mark.

Similarly, defendant does not challenge plaintiff's assertion that plaintiff did not authorize defendant's use of an "Inhale" mark. Thus, whether plaintiff is entitled to summary judgment on its claims for trademark infringement (claim 1), false designation of origin (claim 3), and unfair competition (claim 4) will depend on whether plaintiff can establish, as a matter of law, that defendant's use of its mark is likely to cause consumer confusion.

"The likelihood of confusion inquiry generally considers whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin or source

of the goods or services bearing the mark at issue." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1209 (9th Cir. 2012). The Ninth Circuit uses eight factors, referred to as *Sleekcraft* factors, to determine whether a defendant's use of a mark is likely to confuse consumers. *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1030 (9th Cir. 2010) (citing *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979)). These *Sleekcraft* factors are: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Rearden*, 683 F.3d at 1209 (citing *Sleekcraft*, 599 F.2d at 348–49).

The Ninth Circuit generally disfavors summary judgment in cases concerning likelihood of confusion because it is a fact-specific, multi-factor, non-exhaustive inquiry. *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 901–02 (9th Cir. 2002), *superseded by statute on other grounds*, 15 U.S.C. § 1125. In evaluating these factors, summary judgment for the defendant is appropriate where the plaintiff fails to present "sufficient evidence to permit a rational trier of fact to find that confusion is 'probable,' not merely 'possible.'" *Multi Time Machine, Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 939 (9th Cir. 2015) (quoting *M2 Software, Inc. v. Madacy Ent.*, 421 F.3d 1073, 1080–85 (9th Cir. 2005)). The factors are to be applied flexibly and are not simply a checklist. *Rearden*, 683 F.3d at 1209.

1.    ***Strength of the Mark***

"The more likely a mark is to be remembered and associated in the public mind with the mark's owner, the greater protection the mark is accorded by trademark laws." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000). A mark's strength is evaluated by two components: "the mark's inherent distinctiveness (i.e., its conceptual strength)" and "the mark's recognition in the market (i.e., its commercial strength)." *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 432 (9th Cir. 2017).

To determine a mark's conceptual strength, the Ninth Circuit classifies it along a spectrum of five categories of increasing distinctiveness and strength: generic, descriptive, suggestive, arbitrary, and fanciful. *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1149 (9th Cir. 2011); *see also M2 Software*, 421 F.3d at 1080 ("The more distinctive a mark, the greater its conceptual strength."). Plaintiff argues that the "Inhale" mark is arbitrary, and defendant argues that it is descriptive. Interestingly, both parties argue that the mark does not belong in the category between those two: suggestive.

Arbitrary marks are "common words that have no connection with the actual product." *Surfvivor Media v. Survivor Prods.*, 406 F.3d 625, 631 (9th Cir. 2005). Descriptive marks "describe a particular quality, function, or characteristic of a product or service." *Calista Enters. Ltd. v. Tenza Trading, Ltd.*, 43 F. Supp. 3d 1099, 1116 (D. Or. 2014) (quoting *Blinded Veterans Ass'n v. Blinded Am. Veterans Found.*, 872 F.2d 1035, 1039–40 (D.C. Cir. 1989)). Suggestive marks do not "*describe* the

product's features, but" they do "*suggest*[] them." *Zobmondo Ent., LLC v. Falls Media LLC*, 602 F.3d 1108, 1114 (9th Cir. 2010) (emphasis in original).  Deciding whether a mark is suggestive "or merely descriptive is far from an exact science and is tricky at best." *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1197 (9th Cir. 2009) (internal quotation marks omitted).  The most commonly applied test in the Ninth Circuit, the "imagination" test, "asks whether imagination or a mental leap is required in order to reach a conclusion as to the nature of the product being referenced." *Zobmondo*, 602 F.3d at 1115 (internal quotation marks omitted).

When determining which conceptual category a mark belongs in, a court is "required to consider standards of meaning not our own, but prevalent among purchasers of the article." *Zobmondo*, 602 F.3d 1113.  "The fact-finder is not the designated representative of the purchasing public, and the fact-finder's own perception of the mark is not the object of the inquiry.  Rather, the fact-finder's function is to determine, based on the evidence before it, what the perception of the purchasing public is." *Id*.

Here, there is little evidence on this point.  Plaintiff offers dictionary definitions of the term "inhale"—"to draw in by breathing" and "to take in eagerly or greedily." Pl.'s Mot. Summ. J. at 6–7 (doc. 27) (quoting MERRIAM WEBSTER, https://www.merriam-webster.com/dictionary/inhale  (accessed   Apr.   27,   2020)).  Plaintiff reasons that the "Inhale" mark is arbitrary when applied to its services and products because services and many of its products cannot be inhaled. *Id*.; Pl.'s Resp. to Def.'s Mot. Summ. J. at 6 (doc. 32).  That fact, however, does not negate the

association of the term "inhale" with smoking and products used to smoke, and the registrations themselves limit the trademark protections to services and products related to smoking.

Defendant's reasoning is similarly conclusory and unconvincing. Defendant reasons that "[t]he word 'inhale' is a descriptive mark as applied to tobacco products because it describes, with no exercise of imagination required, what customers do with plaintiff's products." Def.'s Mot. Summ. J. at 6 (doc. 24). Although there is an association between "inhale" and smoking, that association is not so close that the Court can definitely conclude, based on dictionary meanings and defendant's bare reasoning, that connecting "inhale" to smoking products and smoke shops requires *no* exercise of imagination by consumers. "A mark can be suggestive and still convey information about a product." *Zobmondo*, 602 F.3d at 1119. Indeed, courts have found even more straight-forward names like "'CITIBANK" for an urban bank, 'CLASSIC COLA' for a soft drink, [and] 'DIAL-A-MATTRESS' for mattress sales" to be suggestive. *Id.* (citing J. THOMAS MCCARTHY, 2 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 11:72 (4th ed. 2010)). Without further evidence of how consumers perceive the term's meaning, whether the term is suggestive or descriptive is subject to a genuine dispute of facts.

Defendant also asserts that at least seven other tobacco or marijuana stores in at least five states go by the name "Inhale" or a name that incorporates the word. *Id.* at 7; Staats Decl. ¶ 4 (doc. 26). "Extensive use of a mark by third parties *might* indicate that the mark is descriptive of a given class of products." *Zobmondo*, 602

F.3d at 1118 (emphasis added).  But it "[can]not command a summary judgment in the face of disputed facts about how a mark might be perceived by consumers." *Id*. Nevertheless, both suggestive and descriptive terms are "presumptively weak," which, at this point in the strength of the mark analysis, tips this factor slightly in defendant's favor.[2] *Brookfield*, 174 F.3d at 1058.

Plaintiff argues that the "Inhale" mark's conceptual strength is bolstered by its commercial strength.  Pl.'s Mot. Summ. J. at 7 (doc. 27).  Expenditures that increase marketplace recognition, such as advertising costs, offer evidence of commercial strength and "can transform a suggestive mark into a strong mark." *Network Automation*, 638 F.3d at 1149 (citation omitted).  Plaintiff asserts that it has spent "a substantial amount of money marketing, advertising, and promoting the 'Inhale' mark for the last two decades[,]" including "millions of dollars on magazine ads, trade shows, and online marketing throughout the United States, Europe, and Asia." Chaoui Decl. ¶¶ 19–20 (doc. 34).  Plaintiff has also "spent a substantial amount of money stopping third parties from using or infringing" on its mark by sending "countless of [*sic*] cease and desist letters" and filing "numerous lawsuits." *Id*. ¶¶ 22–

---

[2] Plaintiff also argues that it is entitled to a presumption that its mark is inherently distinctive because the U.S. Patent and Trademark Office ("PTO") issued a registration for the mark. Pl.'s Resp. to Def.'s Mot. Summ. J. at 6–7 (doc. 32).  That presumption has little relevance here, because defendant does not argue that plaintiff's mark lacks any distinctiveness (*i.e.*, that the mark is not entitled to trademark protection at all).  Suggestive marks, though "inherently distinctive" and "automatically entitled to federal trademark protection," *Zobmondo Ent., LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010), are still considered "presumptively weak" in the likelihood of confusion analysis, *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1126 (9th Cir. 2014).  *See also Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1142 (9th Cir. 2002) (noting that, despite the incontestable status of plaintiff's mark, "the relative strength or weakness of [the] mark does affect whether a consumer would likely be confused by the marks [defendant] uses" and the incontestable statute "does *not* require a finding that the mark is strong" (emphasis in original)).

23. Finally, plaintiff asserts that, because of this hard work, its mark has been established as a "brand that is recognized worldwide within the smoking articles industry." *Id.* ¶ 24.

This evidence is not sufficient to establish the commercial strength of plaintiff's mark. First, it is too vague and conclusory to support plaintiff's claim of extensive commercial strength. Second, "millions of dollars" does not strike the Court as a large expenditure for advertising and marketing, given plaintiff's assertion that the amount was spent over the course of at least twenty years and three separate continents. Finally, the parties had not completed discovery concerning these matters when these motions were being briefed, so defendant has not had an opportunity to obtain evidence to contest plaintiff's testimony. Because commercial strength may bolster a suggestive or descriptive mark's protection, more information about plaintiff's expenditures and market recognition is needed.

## 2.   *Proximity of the Goods*

Generally, the more related the goods sold by the parties using the mark are, the more likely the goods are to confuse consumers as to who produced the goods. *Brookfield*, 174 F.3d at 1055. Courts focus on whether the public is likely to associate defendant's products with plaintiff when addressing this factor. *Id.* at 1056. The proximity of goods is measured by whether the products are (1) complimentary, (2) sold to the same class of purchasers, and (3) similar in use and function. *Sleekcraft*, 599 F.2d at 350. Related goods are those "which would be reasonably thought by the

buying public to come from the same source if sold under the same mark." *Id*. at 348 n.10.

Defendant argues that the goods are not closely related because the parties sell different goods and operate in different, highly regulated industries. Def.'s Mot. Summ. J. at 7 (doc. 24). According to defendant, plaintiff sells tobacco and tobacco-related products, which defendant characterizes as a "significantly regulated industry," while defendant sells only marijuana and marijuana-related products, which defendant characterizes as an "extremely regulated industry." *Id*. Plaintiff responds that tobacco and marijuana products are "used and function in exactly the same manner, they are both smoked" and are sold to the same class of purchasers: smokers. Pl.'s Resp. to Def.'s Mot. Summ. J. at 10 (doc. 32). Plaintiff also argues that the parties sell identical goods and offer identical services. *Id*. at 9–10.

Although the parties' goods and services are not "identical," they do overlap. Notably, both parties sell apparel and lighters labeled with their marks. Chaoui Decl. (doc. 34) ¶¶ 6, 9, 10, 40 and Exs. D, I–J. Both parties also sell pipes, grinders, vaporizers, ashtrays, and products that can be smoked. *Id*. ¶¶ 40, 47, 48. At the same time, defendant sells cannabis products that are not smoked, including edibles, tinctures, topicals, and transdermal patches. Bartkowski Decl. ¶ 10, May 8, 2020 (doc. 29). And plaintiff also appears to sell products, such as hookah pipes and accessories, that defendant does not sell. Chaoui Decl. (doc. 34) ¶¶ 14, 30 and Exs. D, F.

Similarly, there is evidence of some overlap in the kinds of purchasers to whom the parties sell their products. At least some of the parties' customers belong to a consumer class of "smokers," but some of defendant's customers purchase edible or topical cannabis products exclusively and cannot be considered smokers. Bartkowski Decl. ¶ 10, May 8, 2020 (doc. 29). Further, not all of plaintiff's customers belong to a consumer class of smokers. Some are retailers who purchase plaintiff's products wholesale. Chaoui Decl. ¶¶ 17, 65 (doc. 34).

This evidence may support an inference that the goods are related. Accordingly, this factor is in dispute and is not appropriately decided at this stage.

### 3.    *Similarity of the Marks*

The similarity of the marks is a "critical question" in this analysis because the more similar the marks, the more likely consumers are to be confused. *GoTo.com*, 202 F.3d at 1205. The Ninth Circuit has "developed three axioms that apply to the 'similarity' analysis: 1) Marks should be considered in their entirety and as they appear in the marketplace; 2) Similarity is best adjudged by appearance, sound, and meaning; and 3) Similarities weigh more heavily than differences." *Entrepreneur Media v. Smith*, 279 F.3d 1135, 1144 (9th Cir. 2002).

Defendant argues that its mark is distinguishable from plaintiff's because of the distinctive font and capitalization, the inclusion of a marijuana leaf, and defendant's addition of the word "dispensary" to the mark in response to plaintiff's cease and desist letter. Def.'s Resp. to Pl.'s Mot. Summ. J. at 8–9 (doc. 28); Bartkowski Decl. ¶ 6, Apr. 28, 2020 (doc. 25). Plaintiff argues that the differences in

appearance are slight and that the marks are identical in sound and meaning. Pl.'s Mot. Summ. J. at 9 (doc. 27).

The Court finds that, although both parties marks use the word "inhale," the differences between the two marks change the sight of the disputed marks. Some of the visual differences, including the marijuana leaf and the word "dispensary" in defendant's mark, also change the meaning of the mark. These differences may serve to distinguish defendant's use of "inhale" in the mind of the factfinder. Therefore, this factor requires a jury determination.

### 4.   *Evidence of Actual Confusion*

Neither party presents evidence of actual consumer confusion, although plaintiff requests the opportunity to conduct discovery on this issue. "Because of the difficulty in garnering such evidence, the failure to prove instances of actual confusion is not dispositive. Consequently, this factor is weighed heavily only when there is evidence of past confusion." *Sleekcraft*, 599 F.2d at 353.

### 5.   *Similarity of Marketing Channels*

When parties use the same marketing channels the likelihood of confusion is increased. *Nutri/Sys., Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 606 (9th Cir. 1987). "In assessing marketing channel convergence, courts consider whether the parties' customer bases overlap and how the parties advertise and market their products." *Pom Wonderful LLC. v. Hubbard*, 775 F.3d 1118, 1130 (9th Cir. 2014).

There is some evidence of overlap in the channels that the parties use to advertise and sell their products, but the degree of overlap is unclear. Plaintiff sells

and advertises its products online, Chaoui Decl. ¶ 17 (doc. 34), and defendant operates a website, *id*. ¶ 30 and Exs. F, G. The parties dispute whether defendant sells its products through the website. Plaintiff offers screenshots of defendant's website, which shows products sold by defendant and the prices of those products, but defendant asserts that it does not sell its products over the internet and that its website simply provides a list of products available at their retail store. *Id*. ¶ 30, Ex. F; Bartkowski Decl. ¶¶ 4–6, Apr. 28, 2020 (doc. 25).[3] But even assuming that defendant makes online sales, the parties' convergent use of this ubiquitous marketing channel carries little weight. *See Network Automation*, 638 F.3d at 1151 ("Today, it would be the rare commercial retailer that did not advertise online, and the shared use of a ubiquitous marketing channel does not shed much light on the likelihood of consumer confusion.").

Both parties sell their products at retail stores. Defendant owns one retail store—its marijuana dispensary in Eugene, Oregon. Bartkowski Decl. ¶ 3, Apr. 28, 2020 (doc. 25). Plaintiff does not assert that it operates any stores in Oregon or provide direct evidence that its products are sold at any retail stores in Oregon.

---

[3] Defendant also contends that it is barred from selling its products online. Def.'s Mot. Summ. J. at 2 (doc. 24). But defendant does not point to any Oregon laws or regulations that expressly prohibit marijuana retailers from making online sales. OAR 845-025-2800, the regulation cited by defendant, generally prohibits recreational marijuana retailers from selling, delivering, or transferring "any marijuana item . . . other than as provided by this rule[,]" but it also provides that retailers may "sell, transfer or deliver . . . marijuana items to a consumer 21 years of age or older pursuant to a bona fide order as described in OAR 845-025-2880." Defendant asserts that, if it did take online orders, its "customers would still have to pay at the time of delivery . . . because of state regulations." Bartkowski Decl. ¶ 7, Apr. 28, 2020 (doc. 25). Although the rules governing marijuana deliveries suggest that any sale of marijuana cannot be completed until the in-person delivery requirements are fulfilled, the Court cannot find anything that prohibits preliminary or conditional online payment in the delivery context. In any event, plaintiff did not offer evidence to rebut defendant's assertion that it does not sell online and it is clear that defendant advertises online through its website.

Instead, plaintiff asserts that it "wholesales its smoking articles to countless of [*sic*] smoke shops, including marijuana dispensaries, throughout the United States and beyond" and "[t]herefore, [plaintiff's] smoking articles bearing [its] mark are sold by marijuana dispensaries throughout the United States, including the state of Oregon." Chaoui Decl. ¶¶ 65, 66 (doc. 34). The latter assertion, at best, supports an inference that some of plaintiff's products are sold at a dispensary in Oregon and, at worst, is mere speculation.

At the same time, "[m]arketing channels can converge even when different submarkets are involved so long as the general class of purchasers exposed to the products overlap." *Pom Wonderful*, 775 F.3d at 1130 (internal quotation marks omitted and alterations normalized). Here, there is some evidence of overlap in the parties' customer bases—both parties sell products that can be smoked or can be used by smokers. But, as discussed regarding the proximity of the goods factor, the parties' customer bases also diverge in significant ways. Some of plaintiff's customers are retailers who purchase products wholesale and some of defendant's customers do not smoke. And the parties' bare assertions of the scope of their customer bases provide little evidence to help the Court to evaluate the degree of overlap.

In sum, there is evidence of some overlap in the parties' customer bases and marketing channels, but not enough evidence to evaluate the degree of overlap at this stage.

6.    *Degree of Consumer Care*

"In analyzing the degree of care that a consumer might exercise in purchasing the parties' goods, the question is whether a 'reasonably prudent consumer' would take the time to distinguish between the two product lines." *Survivor Media*, 406 F.3d at 634.    Courts look both to the "relative sophistication of the relevant consumer," *Fortune Dynamic*, 618 F.3d at 1038, and the cost of the item, *Brookfield*, 174 F.3d at 1060, in determining the degree of care likely to be exercised by the purchaser.    The "reasonably prudent consumer" is expected "to be more discerning—and less easily confused—when he is purchasing expensive items." *Id*.    Conversely, customers will likely exercise less care when purchasing inexpensive products, increasing the risk of confusion.    *Id*.

The parties agree that neither of their goods are expensive.    Plaintiff argues that "consumers of smoking articles tend to be unsophisticated in their purchasing habits as they typically purchase smoking articles casually or on an impulse."    Pl.'s Mot. Summ. J. at 12 (doc. 27); Chaoui Decl. ¶ 59 (doc. 34).    However, as discussed above, neither parties' customer base is limited to smokers:    defendant's customers include people who use edible or topical cannabis products and plaintiff's customers include retailers.    Defendant argues that consumers probably exercise more care when purchasing products to ingest and that business owners will likely have a high degree of knowledge about the products and industry and, therefore, will exercise more care in their purchases.    Def.'s Mot. Summ. J. at 9 (doc. 24); Def.'s Reply to Mot. Summ. J. at 9 (doc. 35).

Courts are reluctant to determine the sophistication level of a wide class of consumers because there is not a "clear standard . . . for analyzing moderately priced goods." *Surfvivor Media*, 406 F.3d at 634; *Fortune Dynamic*, 618 F.3d at 1038 ("[We are not] confident of the implications of finding that the consumers are sophisticated. . . . [T]he difficulty of trying to determine with any degree of confidence the level of sophistication of young women shopping at Victoria's Secret only confirms the need for this case to be heard by a jury"). The evidence before the Court shows that at least some of both parties' consumers are "smokers," and at least some of plaintiff's customers are "wholesalers." These are both broad classes of consumers who purchase moderately priced goods. Accordingly, this factor is not appropriate for determination at this stage.

### 7. *Defendant's Intent*

"When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *Sleekcraft*, 599 F.2d at 354. This factor is not required to find trademark infringement. *Brookfield*, 174 F.3d at 1059. To the extent that a party's intent is relevant, it is relevant "only insofar as it bolsters a finding that the use of the trademark serves to mislead consumers rather than truthfully inform them of their choice of products." *Network Automation*, 638 F.3d at 1153.

Defendant asserts that it did not know that plaintiff existed until it received plaintiff's cease and desist letter in September 2019. Bartkowski Decl. ¶¶ 5–6, Apr.

28, 2020 (doc. 25).  Plaintiff disputes this assertion but offers no direct evidence that defendant knew of plaintiff's mark when it adopted the name Inhale.

Plaintiff argues that it is "highly probable that [defendant] knew or should have known about [plaintiff's] trademark before choosing it as its own" because plaintiff has been well-established in the smoking products world for decades, its products are sold and used in Oregon and worldwide, and its trademark was registered, which gave defendant constructive notice.  Pl.'s Mot. Summ. J. at 12 (doc. 27); Chaoui Decl. ¶¶ 17, 19–20, 64–66 (doc. 34).  Plaintiff also points to defendant's response to the cease and desist letter, which plaintiff contends shows that defendant knew of plaintiff's trademarks when it chose the name Inhale but had a "misguided belief that its use would not infringe."  Pl.'s Mot. Summ. J. at 13 (doc. 27); Pl.'s Resp. to Def.'s Mot. Summ. J. at 16 (doc. 32).  Defendant's response to the cease and desist letter consists of its attorney's position that defendant's use of the name Inhale did not infringe on plaintiff's trademarks.  Teran Decl. Ex. B, May 12, 2020 (doc. 33).  The response also states that defendant "appreciates that you have put it on notice of [plaintiff's] registered trademarks, and that it now has the opportunity to review the scope thereof and implications to its business operations."  *Id.*

This indirect evidence does not compel a finding that defendant had known of plaintiff's trademarks when it adopted the name Inhale, let alone evidence that defendant intentionally selected the name to infringe on those marks.  Accordingly, this factor is not appropriately decided at this stage.

8.    *Likelihood of Expansion*

"[A] 'strong possibility' that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing." *Sleekcraft*, 599 F.2d at 354.  To resolve this factor, a court must "determine whether the existence of the allegedly infringing mark is hindering the plaintiff's expansion plans." *Surfvivor*, 406 F.3d at 634.

Plaintiff asserts there is "a strong possibility that, *if and only if* the federal laws for the sale of marijuana are changed, then [plaintiff] will rapidly make entry into the marijuana business much like most other producers in this industry." Pl.'s Resp. to Def.'s Mot. Summ. J. at 17 (doc. 32); Chaoui Decl. ¶¶ 68–69 (doc. 34) (emphasis added).  This evidence demonstrates that plaintiff's intent to expand into the marijuana industry is hindered by federal law, not by defendant's use of its or a similar mark.  Further, there is no indication that federal laws prohibiting the possession, manufacture, and sale of marijuana are likely to change any time soon. Plaintiff's plans to enter the marijuana business are speculation at this time.

Plaintiff also asserts that there is a strong possibility that defendant will start selling tobacco because "no smoke shop is complete without the sale of tobacco related products." Pl.'s Resp. to Def.'s Mot. Summ. J. at 17 (doc. 32); Chaoui Decl. ¶ 61–63 (doc. 34).  That assertion is contradicted by defendant's evidence that it does not intend to expand into tobacco.  Bartkowski Decl. ¶ 11, Apr. 28, 2020 (doc. 25). Therefore, defendant's likelihood of expansion depends on resolution of a factual dispute.

### 9.    *Summary*

Overall, the *Sleekcraft* factors are fairly neutral with a few leaning in either party's favor.  The mark's conceptual strength falls into either the suggestive or descriptive category, affording it weak protection, but the mark's commercial strength cannot be assessed without evidence of plaintiff's expenditures.  Whether customers buying defendant's lighters and apparel, which display defendant's mark, would associate the products with plaintiff is unclear.  The sound of the two marks is similar if not identical, but the differences in font and style, and defendant's addition of a marijuana leaf and the word dispensary do not conclusively show that the sight and meaning of the mark is either similar or not.  The parties dispute whether and to what extent their marketing channels and customer bases overlap, along with the degree of care likely to be exercised by both parties' customers.  The parties also dispute whether there is a strong possibility that defendant will expand into the tobacco industry.  Taken as a whole, these disputes demonstrate the need for at least further discovery, if not resolution at trial.  Thus, neither party has demonstrated it is entitled to summary judgment on this issue.

## II.    *Counterfeiting*

Both parties move for summary judgment on plaintiff's claim for counterfeiting (claim 2) under the Trademark Counterfeiting Act of 1984, 15 U.S.C. §§ 1116(d), 1117(b).  "A 'counterfeit' is a spurious mark which is identical with, or substantially indistinguishable from, a registered mark."  15 U.S.C. § 1127; *see also* 15 U.S.C. § 1116(d)(1)(B).  To prevail on a counterfeiting claim under § 1116(d), the mark in

question must be "(1) a non-genuine mark identical to [or substantially indistinguishable from] the registered, genuine mark of another, where (2) the genuine mark was registered for use on the same goods to which the infringer applied the mark." *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 946 (9th Cir. 2011).

Plaintiff argues that defendant's mark is substantially indistinguishable from the '300 and '650 Registrations for the reasons plaintiff asserted for the "similarity" *Sleekcraft* factor. Defendant asserts that the substantially indistinguishable standard requires a higher level of similarity and argues that the marks can easily be distinguished by their visual differences.

Whether marks are substantially indistinguishable is a question of fact. *Coach, Inc. v. Citi Trends, Inc.*, No. CV 17-4775-DMG (KSX), 2019 WL 1940622, at *3 (C.D. Cal. Apr. 5, 2019); *Coach Inc., v. Siskiyou Buckle Co.*, No. 3:11-cv-486-HZ, 2012 WL 1532489, at *3 (D. Or. Apr. 27, 2012). As the parties' arguments demonstrate, the marks are similar in the general sense, with several visual differences. A reasonable jury faced with these similarities and differences could go either way on this question. Accordingly, the Court concludes that there is a genuine issue of material fact regarding whether defendant used a counterfeit mark on its products.

## III. *Defendant's Profits*

Finally, defendant seeks summary judgment on the issue of whether plaintiff can recover profits that defendant earned from the sale of marijuana and marijuana-

based products.  Def.'s Mot. Summ. J. at 10–11 (doc. 24).  Defendant contends that plaintiff cannot recover those profits because such sales are prohibited by the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, and federal trademark protection is not available for federally-illegal commercial activities.  The Court declines to rule on this issue at this early stage, especially given the disputes of material fact precluding summary judgment on the liability issues.

Plaintiff is not entitled to defendant's profits under 15 U.S.C. § 1117(a) "as a matter of law," despite its contrary assertion.  *See* Pl.'s Resp. to Def.'s Mot. Summ. J. at 20 (doc. 32); *Friend v. H.A. Friend & Co.*, 416 F.2d 526, 534 (9th Cir. 1969) (the "remedy [of an accounting of defendant's profits] is not available as a matter of right").  Section 1117(a) provides for recovery, "*subject to the principles of equity*," of "defendant's profits," "any damages sustained by the plaintiff," and "the costs of the action."  15 U.S.C. § 1117(a) (emphasis added).

The Ninth Circuit has observed that the statute "confers a wide scope of discretion upon the district judge in the fashioning of a remedy."  *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F. 2d 117, 121 (9th Cir. 1968); *see also Faberge, Inc. v. Saxony Prod., Inc.*, 605 F.2d 426, 429 (9th Cir. 1979) ("The award of profits under the statute is expressly made 'subject to the principles of equity.'" (quoting 15 U.S.C. § 1117(a)).  Under some circumstances, courts may properly decide not to award any amount to the plaintiff.  Indeed, in *Faberge, Inc. v. Saxony Products, Inc.*, the Ninth Circuit held that a district court did not abuse its discretion in refusing to award profits *or* damages based on the court's finding that "the costs of litigation and

of modifying the packaging of its product" was enough "to deter further infringement" by the defendant. *Faberge*, 605 F.2d at 429, 429 n.1. On the other end of the spectrum, § 1117(a) expressly provides that, depending on the circumstances of the case, a court may award "any sum above the amount found as actual damages, not exceeding three times such amount" or "such sum as the court shall find to be just," "[i]f the court shall find that the amount of the recovery based on profits is . . . inadequate." 15 U.S.C. § 1117(a). Thus, even if plaintiff ultimately prevails on some or all of its claims, whether the appropriate remedy includes an award of any portion of defendant's profits and the amount of any award will depend on circumstances that are that are still developing.

## CONCLUSION

For the reasons above, the parties' cross motions for summary judgment (docs. 24, 27) are DENIED, plaintiff's Motion to Strike (doc. 38) is DENIED, and defendant's objections (docs. 28 at 1–3, 35 at 1–2) are SUSTAINED with respect to paragraphs 44 and 61 of the Chaoui Declaration (doc. 34) and otherwise OVERRULED.

IT IS SO ORDERED.

Dated this  16th  day of October 2020.


_____/s/Ann Aiken_____

Ann Aiken
United States District Judge